UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:05-CV-220-HRW

DONALD MUNCY and
ROGER MUNCY,                                                              PLAINTIFFS,

V.

SELECTIVE INSURANCE COMPANY
OF AMERICA,                                                                DEFENDANT.

## MEMORANDUM OPINION AND ORDER

Jurisdiction in this case emanates from 42 U.S.C. § 4072, granting original exclusive jurisdiction over the National Flood Insurance Program and disputes thereunder. The case involves a Standard Flood Insurance Policy as codified under the federal regulation found at 44 C.F.R., Pt. 61. Plaintiffs brought this action under 42 U.S.C. § 4072 on their claim for losses under the Standard Flood Insurance Policy and pendent state law claims. Now before the Court are Defendant's Motion for Judgment on the Pleadings [Docket No. 31] and Motion for Summary Judgment [Docket No. 32]. The time for filing responses to the motions having expired, this matter now stands ripe for decision. For the reasons set forth below, the Court will sustain both motions.

**I.**

The National Flood Insurance Program ("NFIP") is operated under Part B of the Plan, under the Director of the Federal Emergency Management Agency ("FEMA"), and uses private insurance companies known as "Write-Your-Own" or "WYO" carriers to issue the Standard Flood Insurance Policy ("SFIP"), a federal regulation codified and found at 44 C.F.R. Pt. 61, App. A(1). Prior to 1978, the NFIP was operated by the U.S. Dept. of Housing and Urban Development ("HUD"); but in 1978, the NFIP began to operate under Plan B (42 U.S.C. § 4071, et. seq.), wherein the Federal Insurance Administration ("FIA") took over the running of the NFIP, and all of HUD's responsibilities were turned over to the Director of FEMA.

In 1983, under Part B of the Program, the Director of FEMA authorized the SFIP to be issued by private insurance companies that agreed to participate as the "fiscal agents" of the United States. Under the current system, Congress underwrites all operations of the NFIP, including claims adjustment, through the U.S. Treasury. Congress has conferred "rule-making power upon the agency created for carrying out its policy" to FEMA. Congress statutorily authorized FEMA to enter into "arrangements" with private insurance companies that operate with a federal checkbook as the "fiscal agent of the United States." The Sixth

Circuit considers WYO Program carriers to be the "fiscal agents" of the United States.

**II.**

Plaintiffs are property owners in Lewis County, Kentucky. Defendant Selective Insurance participates in the National Flood Insurance Program as a Write-Your-Own Carrier. Prior to September 18, 2004, Plaintiffs had purchased insurance coverage from the Defendants, including premises coverage, flood insurance coverage, and other various insurance coverage.[1] The policy issued to Plaintiffs was a Standard Flood Insurance Policy as set out at 44 C.F.R. § 61, App. A(1). The covered structure is Plaintiffs' seasonal residence located at Vanceburg, Kentucky. (Docket No. 32, Attachment No. 3). Plaintiffs' SFIP carried building coverage limits of $87,900 and contents limits of $56,000, each with a $1,000 deductible. (Docket No. 32, Attachment Nos. 3-4).

In administering this policy, Defendant Selective acts as a fiduciary and agent of the U.S. Government. All premiums paid for said policy are the property of the U.S. Treasury and not Selective. Flood loss claims presented under the NFIP are paid with U.S. government funds. *See* 44 C.F.R. § 62, App. A, Art.

---

[1] Plaintiff was issued Dwelling Form SFIP bearing policy number 106959 by and through Selective in its capacity as a WYO carrier. *See* Docket No. 32, Attachment No. 4.

III(D)(1).  And *see Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 165 (3rd Cir. 1998) (recognizing that "regardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims.")

Plaintiffs allege that on or about September 18, 2004, the property, home, and premises of Plaintiffs were severely damaged by flood waters incident to Hurricane Ivan.  Plaintiffs' Complaint alleges this damage necessitated repairs in the amount of $18,700.

Plaintiffs gave notice of the flooding to Defendant Selective.  Selective then sent Alvin Newsome, an independent adjuster, to inspect the Plaintiffs' property on October 27, 2004.  Following his inspection, Newsome recommended payment on the claim in the amount of $1,361.35.  (Docket No. 32, Attachment Nos. 6-9).  Plaintiffs disagreed with the amount and filed this lawsuit seeking additional benefits under their SFIP.

Because the Plaintiffs alleged structural damages, Selective hired a structural engineer to inspect the property.  John Leslie, P.E. inspected the property on February 2, 2007.  Leslie concluded that none of the items of damages listed by the Plaintiffs were attributable to flood.  Rather, the damages he observed were, in his opinion, attributable to either faulty construction and differential settlement of the

soil beneath the house. *See* Leslie Report, Docket No. 32, Attachment Nos. 10-11. Plaintiffs seek $18, 700 for the damages described above. The conclusions of the structural engineer that those damages were not caused by flooding form the basis for Defendant's Motion for Summary Judgment on the SFIP claims.

Additionally, the Complaint alleges a state-law bad faith conduct in violation of the Unfair Claims Practices Act. Specifically, the Complaint alleges that Defendant made one visit to the property and then tendered a check for $1,361, providing no explanation as to how that amount was calculated. Plaintiffs claim that they then forwarded a written estimate prepared by a building contractor as well as a letter from Plaintiffs' attorney, asking for information and requesting additional payment. However, this is merely alleged in the complaint but not proven by anything in the record.

Plaintiffs claim that Defendants failed to respond in any way to that letter and estimate. This, Plaintiffs charge, violates the Unfair Claims Settlement Practices Act, and amounts to bad faith conduct. For this Plaintiffs seek $250,000 in compensatory damages and $750,000 in Punitives. Defendant's Motion for Judgment on Pleadings concerns these claims.

**III.**

Defendant has moved for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) with respect to the state law claims. The standard of review applicable to a motion for judgment on the pleadings is identical to that applicable to a motion to dismiss made pursuant to Rule 12(b)(6). In other words, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief." *Ziegler v. IPB Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

In the Motion for Judgment on the Pleadings, Defendant argues that state law based extra-contractual claims such as the Plaintiffs' bad faith claims are preempted and barred by federal law. *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 950 (6th Cir. 2002)[2] provides authority for this position.

The *Gibson* plaintiffs had purchased an SFIP through WYO carrier American Bankers Insurance. They claimed their home and contents were damaged by a flood, but the defendant American Bankers denied coverage. The plaintiffs then filed suit in a Kentucky state court alleging breach of contract, violation of Kentucky Unfair Claims Settlement Act, and breach of fiduciary

---

[2] Defendant also cites voluminous authority from other jurisdictions, all in agreement that preemption applies to bar extra-contractual state claims.

obligations and good faith and fair dealing. The contractual claims were dismissed for failure to meet the applicable statute of limitations. The Sixth Circuit upheld the dismissal of the state law based extra-contractual claims on the grounds that they are expressly preempted.

The Sixth Circuit found that all of the *Gibson* plaintiffs' state law claims (ie, failing to act promptly on communications, refusing to pay the claim, failing to affirm coverage, and not attempting a good faith settlement) emanated from the disposition of a claim under the SFIP. The Court recognized, in line with the other circuits and districts to consider the issue, that adjustment and disposition of claims under the SFIP and judicial review are heavily regulated by federal statutes and FEMA regulations. The Court thus concluded that "uniformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject." *Id.* at 949. Because of the statute's grant of original and exclusive jurisdiction to the Federal Courts and because a suit under the SFIP actually is a suit for federal funds, the Court concluded that no state law based claims could be maintained with regard the claims adjustment process. *Id. Gibson* has not been overturned, limited, or backed away from by any other 6th Circuit panel considering this issue.

In the case at bar, Plaintiffs allege the same kinds of state law claims that the

Sixth Circuit found were preempted in *Gibson.*

Moreover, Plaintiffs' SFIP, Article IX (found at 44 C.F.R. Pt. 61, App. A(1), Art. IX) expressly states:

> This policy and **all disputes arising from the handling of any claim under the policy are governed exclusively by** the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et. seq.*) and Federal common law. **(**emphasis added**).**

Plaintiffs did not file a response to the Motion for Judgment on the Pleadings. In any event, Defendant's arguments are well made. The motion will be sustained, and the Court will grant Judgment on the Pleadings with regard to the state law claims.

**IV.**

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56, with respect to the claims brought under the SFIP. Under Rule 56, the Court must view the evidence in the light most favorable to the nonmoving party. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiff in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy," *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986),

the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

Defendant advances multiple arguments in support of its Motion for Summary Judgment on Plaintiffs' claims under the Standard Flood Insurance Policy. First, Defendant argues that Plaintiffs failed to meet the conditions precedent to coverage in that they failed to provide a timely signed and sworn proof of loss as required by Article VII (J)(4) of the policy. Defendant additionally argues that Plaintiffs' damages were caused by events specifically excluded from coverage under the SFIP. Because the Court finds the Defendant is entitled to

9

judgment as a matter of law based on the proof of loss requirement, any questions surrounding the cause of the damages need not be reached.

Before an insured may file a lawsuit seeking federal benefits under the SFIP, the participant must be able to show prior compliance with all policy requirements. 44 C.F.R. § 61 App. A(1), Art. VII(R).   Defendant alleges that Plaintiff failed to file a timely proof of loss, as required by the SFIP at Article VII(J)(4).[3]

---

[3] That provision reads as follows:
> J. Requirements in Case of Loss
> In case of a flood loss to insured property, you must:
> 1. Give prompt written notice to us;
> 2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;
> 3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.  Attach all bills, receipts, and related documents;
> 4. Within 60 days of loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>> a. The date and time of loss
>> b. A brief explanation of how the loss happened;
>> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>> d. Details of any other insurance that may cover the loss;
>> e. Changes in title or occupancy of the covered property during the term of the policy;
>> f. Specifications of damaged buildings and detailed repair estimates;
>> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>> h. Details about who occupied any insured building at the time of loss and for what purpose;
>> i. The inventory of damaged personal property described in J.3. above.

In this case, Plaintiff does not dispute the failure to file a proof of loss, but rather argues, in essence, that the Defendant should be estopped from relying on the proof of loss requirement now. Plaintiff states that the Defendant accepted the Plaintiff's claim, sent an adjuster to view the property, and then issued a check to settle the loss. Plaintiff argues that Defendant didn't raise the proof of loss as an issue until the suit was filed, and therefore, cannot rely on that as a defense to the claim.

Plaintiff cites *Lewis v. State Farm Fire and Cas. Co.*, 238 F.3d 422 (6th Cir. 2000) (unpublished table decision), and *Hornback v. Hornback*, 667 S.W.2d 399 (Ky. App. 1984), for the doctrine of substantial performance with regard to submitting proof of loss forms. Plaintiffs claim that they substantially complied, and that should be good enough. However, *Lewis* and *Hornback* both involved state law claims under policies of fire insurance (ie, not federal claims under the National Flood Insurance Program), and are thus not applicable to this Federal Question action.

Plaintiff's attempt to rely on the state law concept of substantial performance is misplaced, as this case does not present an ordinary contract of insurance (like fire insurance). As discussed above (see discussion of *Gibson, supra*), Federal law is controlling where claims under a Standard Flood Insurance Policy such as this

11

are at issue. Moreover, federal law governing the application of the flood insurance policies clearly mandates a strict application of the policy requirements.

Every Circuit to have considered the issue has held that the proof of loss requirement must be strictly enforced, and substantial compliance is not enough to sustain a suit for federal funds.[4] This uniform approach has emanated from the Fifth Circuit's holdings in *Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998) and *Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998). The Sixth Circuit has joined in this view, adopting the approach of the sister circuits in *Neuser v. Hocker*, 246 F.3d 508, 511-12 (6th Cir. 2001) (Nelson, J.). *Neuser* also involved a claim under a Standard Flood Insurance Policy where the insured failed the sworn proof of loss requirement, and the Sixth Circuit affirmed the District Court's summary judgment for the WYO carrier. The Sixth Circuit agreed that the proof of loss requirement must be strictly enforced. Adopting the approach of the Ninth Circuit, the Court stated that "a claimant under a standard flood insurance policy may not avoid strict enforcement of the 60 day sworn proof of loss requirement, except through a valid waiver by the Federal Insurance Administrator." *Id.* (citing *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 391-92 (9th Cir. 2000).

---

[4]See *Sanz v. U.S. Security Ins. Co.*, 328 F.3d 1314, 1318 (11th Cir. 2003); *Neuser v. Hocker*, 246 F.3d 508, 511-12 (6th Cir. 2001); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 391 (9th Cir. 2000); Gowland *v. Aetna*, 143 F.3d 951 (5th Cir. 1998); *Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998).

In discussing strict enforcement of the proof of loss requirement, *Flick* references the condidtions for valid waiver set forth in 44 C.F.R. Pt. 61.13(d).  That provision reads as follows:

> (d) Waivers.  The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than by the express written consent of the Administrator through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use.

44 C.F.R., Pt. 61.13(d).

The record reveals that the Administrator did issue a waiver for the Hurricane Ivan cases, but only for cases in which the claimant and the adjuster agreed on an amount.  In that event, the Administrator said the adjuster's report could serve as the proof of loss in order to expedite the settling of the claim.  However, in cases like this one, where the claimant and the adjuster disagreed as to the amount of loss, then the claimant still has to satisfy the proof of loss requirements as set forth in the policy.  Rather than the usual 60 days, though, the claimant has one year from the date of loss to submit a valid proof of loss.  The process was then to proceed in "normal fashion." The Plaintiffs have never, ever submitted a sworn  proof of loss.  And this fact is undisputed.

In short, there was a waiver, but it did not apply to this situation because the

13

Plaintiffs' claimed loss and the adjuster's report differed by more than $15,000. Despite being given a year–rather than just 60 days– to submit proof of loss of this amount, the Plaintiffs submitted nothing. Moreover, the Plaintiffs' response to the Motion for Summary Judgment does not even attempt to argue that the waiver applied to their case.

Thus, the only argument Plaintiffs have advanced against strict enforcement of the proof of loss requirement (ie, the state law concept of substantial performance) is unavailing. The authority for strict enforcement, both in this circuit and others, is solid. Plaintiffs did not submit a valid proof of loss as required under the policy and are not entitled to maintain an action for federal funds. The Court is thus compelled to dismiss the contractual claims and enter judgment for the Defendant.

**V.**

For the foregoing reasons, both the Motion for Judgment on the Pleadings [Docket No. 31] and the Motion for Summary Judgment [Docket No. 32] will be sustained. A separate judgment consistent with this opinion shall enter contemporaneously herewith.

This July 31, 2007.



Signed By:
*Henry R Wilhoit Jr.*
United States District Judge